**UNITED STATES DISTRICT COURT,
SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA.

    Plaintiff.  CASE NO. 00-6360-CR-DIMITROULEAS

vs.

ADRIANO MARTINEZ,

    Defendant.
_____/

## OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT

COMES NOW the defendant, Adriano Martinez, and files his objections to the Offense Level Computation of the Presentence Investigation Report (PSI), and says as follows:

The defendant submits four (4) objections to the PSI prepared by the Unites States Probation Office:

    1. Acceptance of responsibility.

    2. In paragraph 46, the PSI assesses a two (2) level enhancement for "more than minimum planning".

1

3. In paragraph 48, the PSI failed to recommend a three (3) level downward departure for Martinez's slightly more than minimal participation but less than minor.

4. In paragraph 45, his offense level was extraordinarily magnified by the value of the loss attributed to the defendant.

These errors or role assessment are inconsistent with Martinez's role assessment as set out on page 15 of the PSI. Martinez's role assessment has him involved with there (3) thefts:

| | | |
|---|---|---|
| 1. Canon Toner Cartridges - | | on October 15, 1995, Martinez helped off-load the merchandise. |
| | - | on October 16, 1995, Martinez delivered a portion of the merchandise. |
| 2. Clorox Products | - | delivered merchandise to a buyer. |
| 3. Crayola Crayons | - | delivered a portion of merchandise to a buyer. |

### 1. Acceptance of Responsibility

The Defendant, ADRIANO MARTINEZ, was surprised that the Pre-Sentence Investigation Report did not reflect a three level downward departure for acceptance of responsibility. At the PreSentence Investigation Report Interview Mr. Martinez was extremely candid and remorseful concerning his participation in this criminal episode. Counsel was of the opinion that this would have been sufficient for him to receive the downward departure for acceptance of responsibility. On June 4th, 2001, several days after the disclosure of the PreSentence Investigation Report, a written statement, attached hereto, was forwarded to the United States Probation Officer. This statement re-iterates Mr. Martinez' acceptance of responsibility and remorse for

2

being involved in this criminality. There should be no question as to his sincerity and he should receive the three levels which would make his total offense level prior to arguing any other objection a level 14.

## 2. More Than Minimum Planning

The profile of Martinez in this offense is that he was someone who made no decisions or plans, and was used merely for offloading maybe two trucks, and on two occasions delivering, as directed, a portion of the merchandise to buyers.

In the case of *U.S. v. Tapia*, 59 F.3d 1137 (11 Cir.1995), the defendant was convicted of obstruction of justice by having a government witness beaten in his jail cell. The Eleventh Circuit discussed whether the trial court erred in increasing the defendant's an additional two levels for "more than minimal planning". The Court discussed the parameters of "more than minimum planning":

> U.S.S.G. § 1B1.1(f) sets forth three circumstances under which more than minimal planning exists: (1) if the defendant undertook "more planning than is typical for commission of the offense in a simple form"; (2) if "significant affirmative steps were taken to conceal the offense"; or (3) "in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune." The district court concluded that "Perez, by his telephone conversation with Ryan, effectuated more than minimal planning in the retaliation against the witness Connelly." We cannot agree.
>
> We review the district court's finding of "more than minimal planning" for clear error. See *United States v. Garcia*, 13 F.3d 1464, 1470 (11th Cir.), cert. denied, 512 U.S. 1226, 114 S.Ct. 2723, 129 L.Ed.2d 847 (1994). This enhancement is "usually applied to sophisticated crimes or offenses requiring repeated

3

> acts over a period of time." *United States v. Cropper*, 42 F.3d 755, 758 (2d Cir.1994). In this case, Perez did not formulate a sophisticated plan or an elaborate scheme. There was no evidence, for example, that Perez took steps to have Connelly placed in the cell with him. Although Perez did place a phone call to ascertain that Connelly planned to testify against Ryan, the phone call was made immediately prior to the attack. The crime therefore did not involve more planning than typical for the commission of this offense. Further, Perez took no steps to conceal the crime from the jail officials and the crime did not involve repeated acts over a period of time. We therefore hold that the court clearly erred in concluding that Perez effectuated more than minimal planning in the retaliation against Connelly.

59 F.3d at 1144.

In *Cropper, supra,* the Second Circuit held that before defendant's offense level can be increased by two points for "more than minimal planning", it is required "that **the defendant**: (1) engaged in more planning than the offense would require in its simple form; or (2) took significant steps to conceal the crime, excluding conduct that constitutes obstruction of justice." (Emphasis added.)

In each of the Eleventh Circuit cases cited here, and which originated in the Federal District Courts of Florida, the courts, as in *Tapia,* and consistent with *Cropper,* have looked to the conduct of the defendant to determine if he/she has been involved in more than minimal planning. *See U.S. v. Ward,* 222 F.3d 909 (11th Cir. 2000)(armed security committed two thefts twenty days apart, and placed seal on money bag during second theft in attempt to conceal offense.); *U.S. v. Daniels,* 148 F.3d 1260 (1th Cir.1998)(Defendant's embezzlement of funds from employee benefit plan occurred over period of nearly five years);*U.S. v. Bush,* 126 F.3d 1298 (11th Cir.

4

Stephen J. Golembe, P.A. Attorney at Law
2601 SOUTH BAYSHORE DRIVE, SUITE 1400, COCONUT GROVE, FLORIDA 33133 • TELEPHONE (305) 858-0404

1997)(Defendant embezzled money from credit union on three separate occasions, each involving false entries, and took affirmative steps to conceal embezzlement by stopping mail from being sent to customer whose savings she had used as collateral for fictitious loan.); and *U.S. v. Scroggins*, 880 F.2d 1204 (11th Cir.1989)(Finding that postal theft defendant's thefts involved more than minimal planning, for sentencing purposes, was sufficiently supported by evidence that defendant had committed series of 19 postal thefts.) *See also* *U.S. v. Garcia*, 13 F.3d 1464 (11th Cir.1994); *U.S. v. Mullins*, 996 F.2d 1170 (11th Cir. 1993); and *U.S. v. Kramer*, 943 F.2d 1543 (11th Cir.1991). Herein, there is no evidence that Martinez planned any facet of this offense, it is obvious that he was only "hired help" who did what he was told - he was merely following orders to do specific tasks.

### 3. Downward Departure for Minimum Participation in the Offense

The same minimal conduct of Martinez, discussed above, coupled with a lack of authority within the participants, as well as a lack of knowledge of the scope of the offense conduct/role of other participants, warrants granting Martinez a downward departure of four levels pursuant to USSG § 3B1.2. This section provides for a decrease of four levels if a defendant was a minimal participant in any criminal activity; and the Guidelines commentary defines a "minimal" participant in a criminal activity for the purpose of entitling the defendant to a downward adjustment in sentencing as follows:

> 1. Subsection (a) applies to a defendant who plays a minimal role in concerted activity. It is intended to cover defendants who are plainly among the least

5

> culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant.
>
> 2. It is intended that the downward adjustment for a minimal participant will be used infrequently. It would be appropriate, for example, for someone who played no other role in a very large drug smuggling operation than to offload part of a single marihuana shipment, or in a case where an individual was recruited as a courier for a single smuggling transaction involving a small amount of drugs.

Guidelines § 3B1.2, Commentary, Application Notes 1, 2. Martinez submits that his role of being only an off-loader and driver and of a small portion of the total amount of merchandise warrants him being granted a four level downward departure.

In the case of *United States v. DeMasi*, 40 F.3d 1306 (1st Cir. 1994) the court held that a defendant's participation in attempted robbery fell between minor and minimal role, warranting three-level reduction in his base offense, where defendant attended only one of numerous surveillance meetings, and he served only as lookout for attempted robbery. *See also United States v. Westerman*, 973 F.2d 1422 (8th Cir. 1992), wherein the appellate court reversed the district court's refusal to grant a downward departure for defendant who drove coconspirators to house they tried to burn as part of mail fraud scheme.

### 4. Extraordinarily Magnified Offense Level

The PSI assesses Martinez's base offense level as 4, and then calculates that, based in the sliding scale of the loss table (§ 2B1.1(b)(1)), the offense level should

6

be increased by a factor of 11 levels because of the stipulated amount of loss - $446,667.00. Martinez argues that his offense level has been extraordinarily magnified and does not accurately reflect his role in the offense, as an offloaded and driver. If all other factors in the calculation of his total offense level were to remain the same, the increase of 11 levels has the dramatic difference of resulting in a total offense level of 14 (offense level after receiving acceptance of responsibility) instead of 6, therefore increasing his exposure from a range of 0-6 months incarceration to a range of 15-21 months incarceration. Martinez argues that, pursuant to USSG § 5K2.0 p.s., his offense level should be appropriately departed downward to accurately reflect his role in the charged offense.

In the case of *United States v. Stuart*, 22 F.3d 71 (3rd Cir. 1994), the court addressed a circumstance where it upheld the sentencing court's determination that the strict application of the loss tables overstated the seriousness of the offense. In *Stuart*, the defendant made two deliveries of stolen United States savings bonds; the first delivery was of 20 $1000 bonds and a second delivery of 109 $1,000 bonds two weeks later. Stuart made these deliveries at the direction of his co-defendant who had control of the stolen bonds. Stuart was to have been paid $2,000 for these deliveries. On appeal, Stuart argued that, *inter alia*, he should not have received a nine-level enhancement based on the $129,000 face value of the bonds he delivered. The *Stuart* court held that in as much as Stuart did not ask for a downward departure at the sentencing, the court did not reverse the trial court's application of the loss table for the purpose of sentencing Stuart. However, the case was remanded for re-

7

sentencing on other grounds, and the court noted that the nine-level enhancement may be an overstatement of the offense, and Stuart may move for a downward departure on that basis:

> Nevertheless, we are left with the definite impression that, notwithstanding the proper application of the Guidelines, a nine-level enhancement under these circumstances may well overstate both the degree of Stuart's criminality and his need to be corrected. At most, Stuart agreed to deliver stolen bonds on two occasions, for a total payment of $2,000. If on remand Stuart requests a downward departure, the district court may well find there to be little relationship between Stuart's role in the offense and the value of the stolen property he was carrying.
>
> A district court has the authority to depart from the Guidelines if it finds that "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." *United States v. Bierley*, 922 F.2d 1061, 1067 (3d Cir.1990) (quoting 18 U.S.C. § 3553(b); U.S.S.G. § 5K2.0). When an atypical case falls outside the "heartland" in that "a particular guideline linguistically applies but ... the conduct significantly differs from the norm," the court may consider whether a departure is warranted. United States Sentencing Commission Guidelines Manual 5-6 (1992). In making this evaluation, the court should first apply other relevant guidelines by analogy. See Bierley, 922 F.2d at 1069. As one court has persuasively stated:
>> When departing on the basis of offense characteristics, the sentencing court should extend or extrapolate from other Guideline levels or principles, or employ analogies to closely related circumstances or conduct addressed by the Guidelines. In effect, the court predicts what level

8

> of punishment the Sentencing Commission would have assigned to the offense had it been considered in the formulation of the Guidelines.
>
> *United States v. Strickland,* 941 F.2d 1047, 1051 (10th Cir.) (citation omitted), cert. denied, 502 U.S. 993, 112 S.Ct. 614, 116 L.Ed.2d 636 (1991).
>
> Although the commentary to U.S.S.G. § 2B1.1 is silent on the issue, application note 10 to section 2F1.1 discusses departures and recognizes that in a few circumstances, strict application of the loss tables can overstate the seriousness of the offense. We think it is appropriate here to accept guidance from the commentary to the fraud and deceit guideline because loss and its valuation often differ little as between the crimes of theft, receipt of stolen property and fraud. Indeed, application note 7 to section 2F1.1 states that "[f]requently, loss in a fraud case will be the same as in a theft case."

22 F.3d at 82-83. The *Stuart* panel cited with approval the case of *U.S. v. Restrepo*, 936 F.2d 661 (2nd Cir. 1991), and concluded that "[w]here application of the Guideline's monetary tables bears little or no relationship to the defendant's role in the offense and greatly magnifies the sentence, the district court should have the discretion to depart downward." 22 F.3d at 83.

In *Restrepo*, the appellate court concluded that the sentencing judge did not err when it, over the objection of the government, departed downward four levels on the ground that the defendants' minimal involvement in the offense was not adequately accounted for in the Sentencing Guidelines. In *Restrepo*, the base offense level for several defendant's was increased 9 levels for the stipulated amount of funds involved in money laundering. The *Restrepo* court noted that "[t]he district court has

9

discretion to sentence below the range specified by the guidelines if it determines 'that there exists a[ ] ... mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a [lower] sentence.' 18 U.S.C. § 3553(b) (1988); see U.S.S.G. § 5K2.0, p.s."

In upholding the sentencing court's finding that there was no connection between the value of the funds involved in the offense and the defendants' conduct in the offense, the *Restrepo* court recognized the sentencing judge's downward departure in the circumstances of that case to be "simply a recognition that when an aggravating factor is translated to a sliding scale of offense levels, the assumptions underlying that translation cannot fairly reflect every possible case. Cf. U.S.S.G. § 2F1.1, comment. (n.10) (increasing the offense level for crimes of fraud based upon monetary loss may require downward departure if the seriousness of the offense is thus overstated)." *Id.* at 667.

      Respectfully submitted,

      STEPHEN J. GOLEMBE, ESQUIRE
      Terremark Centre - Suite 1400
      2601 South Bayshore Drive
      Miami, Florida 33133
      (305) 858-0404

      STEPHEN J. GOLEMBE, ESQUIRE
      Florida Bar No.: 137225

10

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was forwarded to Assistant United States Attorney Don Chase, 500 East Broward Boulevard, Suite 700, Fort Lauderdale, Florida and United States Probation Officer Sara Garcia, 300 Northeast 1st Avenue, Room 315, Miami, Florida 33128 on this _____ day of June, 2001.

STEPHEN J. GOLEMBE, ESQUIRE

STEPHEN J. GOLEMBE, P.A. ATTORNEY AT LAW
2601 SOUTH BAYSHORE DRIVE, SUITE 1400, COCONUT GROVE, FLORIDA 33133 • TELEPHONE (305) 858-0404